UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **WILLIAM JOHN PATTON, SYDNEY LANGLEY, PAM CAGE, AND CLAUDE CAGE individually and on behalf of all others similarly situated,**<br>     **Plaintiffs**<br><br>**VERSUS**<br><br>**CLEOPATRA SHIPPNG AGENCY, LTD and KIRBY INLAND MARINE, LP**<br>     **Defendants** | **CIVIL ACTION NO. _____**<br><br><br><br><br><br>**JURY TRIAL REQUESTED** |

## CLASS ACTION COMPLAINT

Plaintiffs, William John Patton, Sydney Langley, Pam Cage, and Claude Cage, (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, brings this action as a class action against the Defendants Cleopatra Shipping Agency, Ltd. and Kirby Inland Marine, LP , and avers as follows:

### GENERAL ALLEGATIONS

1.      Plaintiffs are all citizens of the State of Texas, and were passengers aboard the M/V CARIBBEAN PRINCESS scheduled to sail from the Bayport Cruise Terminal in the Port of Houston on Saturday, March 22, 2014 for a week long Caribbean cruse.

2.      On March 22, 2014, a collision occurred between a barge being pushed by the M/V MISS SUSAN and the 585-foot bulk carrier, M/V SUMMER WIND. As a result of the collision, the barge's hull and tank were breached resulting in a large spill of marine fuel oil (also known as special bunker). The barge also sank to the bottom of the channel and lies partially submerged. At the time of this filing, it is unknown how much of the 924,000 gallons being

carried by the barge was released into Galveston Bay, but the spill was very large and has had a wide and devastating effect on Galveston Bay, the Gulf of Mexico, and the people who use and depend on it.

3. As a direct and proximate cause of the collision, all marine traffic was halted in the Bay and prevented entry into the Gulf of Mexico.

4. The inability of marine traffic to traverse the Bay also caused the departure date of the Plaintiffs' cruise to be delayed until Wednesday, March 26, 2014.

5. As such, the Plaintiffs sustained losses and damages and seek to represent a class of individuals who were passengers aboard the M/V CARIBBEAN PRINCESS on Saturday, March 22, 2014 from the Port of Houston, but whose departure was delayed as a result of the collision.

6. The Plaintiffs also seeks to represent all other similarly situated individuals who were scheduled to depart on any other cruise ships or vessels from the Port of Houston or Galveston Bay, but were delayed as a result of the collision.

7. As a result of the delays created by the collision, the Plaintiffs and class members aver that they suffered damages and losses.

## PARTIES

8. Again, the Plaintiffs are citizens of the State of Texas, who suffered damages and losses as a result of the collision between the M/V MISS SUSAN and the M/V SUMMER WIND which caused an unforeseen delay of several days in the departure of the M/V CARIBBEAN PRINCESS.

9. The Defendant Kirby Inland Marine, LP (''Kirby Marine") is a Delaware limited partnership that does business in the State of Texas and throughout the United States.

10. The M/V MISS SUSAN was owned, manned, possessed, managed, controlled, chartered and/or operated by Kirby Marine.

11. The Defendant Cleopatra Shipping Agency LTD is a foreign corporation with offices in Greece that does business in the State of Texas and throughout the United States.

12. The M/V SUMMER WIND was owned, manned, possessed, managed, controlled, chartered and/or operated by Cleopatra Shipping Agency LTD.

## JURISDICTION AND VENUE

13. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

14. The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

15. In addition, this Court will have jurisdiction over this action pursuant to the Oil Pollution Act, 33 U.S.C. § 2717 (b) (the "OPA"); however, all such claims are reserved pending the completion of all requisite administrative proceedings

16. Additionally, the prosecution of this action in this district is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

17. As previously stated, on March 22, 2014, a collision occurred between a barge being pushed by the M/V MISS SUSAN and the 585-foot bulk carrier, M/V SUMMER WIND. As a result of the collision, the barge's hull and tank were breached resulting in a large spill of marine fuel oil (also known as special bunker) the barge also sank to the bottom of the channel

and lies partially submerged. At the time of this filing, it is unknown how much of the 924,000 gallons being carried by the barge was released into Galveston Bay, but the spill was large and has had a wide and devastating effect on Galveston Bay, The Gulf of Mexico, and the people who use and depend on it. Much of the marine traffic in the Bay was stopped, including the passage of the M/V CARIBBEAN PRINCESS and other unknown but identifiable cruse ships.

## CLASS DEFINITION

18. The Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the Class, defined as follows:

> All individuals who sustained losses or damages as a result of the cessation, diversion and delays caused by the collision and who were passengers aboard the M/V CARIBBEAN PRINCESS and/or aboard any other cruise ship denied entry into the Gulf of Mexico by the oil spill which occurred as a result of the collision between the M/V MISS SUSAN and the M/V SUMMER WIND, in Galveston Bay on March 22, 2014.

This action may also be subdivided into subclasses, as the Court deems appropriate, without defeating Class status.

19. Excluded from the Class are: (a) the officers and directors of any Defendants; (b) any judge or judicial officer assigned to this matter and his or her immediate family; and (c) any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ALLEGATIONS

20. Plaintiffs claims are made on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

21. *Numerosity.* Upon information and belief, the Class consists of hundreds, if not thousands, of individuals who have been legally injured by the disaster, making joinder impracticable.

22. *Typicality and Commonality.* The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs, like all Class Members, have suffered as a result of the delay and disruption of their planned Caribbean vacation cruises.

23. Furthermore, the factual bases of the Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class.

24. *Adequacy.* The named Plaintiffs will fairly and adequately represent and protect the interests of the Class. The named Plaintiffs have retained counsel with substantial experience in maritime law, and in prosecuting mass tort and complex class actions, including catastrophic oil spills.

25. The named Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither the named Plaintiff nor their counsel have interests adverse to those of the Class.

26. *Predominance of Common Questions of Fact and Law.* There is a well-defined community of interest that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

(a) Whether Defendants caused and/or contributed to the collision and oil spill;

(b) Whether Defendants were negligent;

(c) Whether Defendants acted maliciously or with reckless disregard; and

(d) The amount of damages the named Plaintiffs and Class Members should receive in compensation.

27. Intentionally left Blank

28. Intentionally left blank

29. *Superiority*.  Absent class treatment, the named Plaintiffs and Class Members' sustained harm and damages as a result of the Defendants' unlawful and wrongful conduct will remain unabated.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action individual Class Members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the relation of the economic value of the individual Class Members' claims in comparison to the high litigation costs in complex environmental cases such as this, few could likely seek their rightful legal recourse. Absent a class action, Class Members will have suffered losses and damages without adequate remedy.

31. The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of the Class' claims.

32. *Class Certification under Rule 23*.   Individual litigation of the named Plaintiffs' and other Class Member's claims would present a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for the Defendants, as well as the risk that adjudications for some individual class members could impair the ability for other class members to protect their own interests, thereby making class certification of this action appropriate under Rule 23(b)(1)(A) and (B).

33. Individual litigation could spawn inconsistent or contradictory judgments on issues of the Defendants' knowledge, intent, recklessness, conduct, and duty — concepts that should not vary, as of any particular point in time, from Class Member to Class Member.

Individual litigation would also increase the delay and expense to all parties and the court system and could undermine public confidence and trust in the judicial system.

34. In the particular context of punitive damages, piecemeal adjudications of punitive damages on economic loss and property damage claims on an individual basis do not and cannot hold the Defendants legally accountable for the total scope of their unique tortious conduct.

35. The named Plaintiffs seek class-wide adjudication as to the issue of punitive damages, with respect to the total amount the Defendants may be constitutionally or equitably required to pay into a punishment fund (the "limits of punishment"), and the appropriate allocation and distribution of such damages to any member of the Class and/or Subclasses for their benefit, and that of the public as a whole. The prosecution of separate actions by individual members of the Class and/or Subclasses on such claims and issues would create an immediate risk of inconsistent or varying adjudications. These varying adjudications would be prejudicial to members of the Class, Subclasses, and Defendants, would frustrate the purposes and policies of punitive damages by fostering sub-optimal punishment and deterrence, and would establish incompatible standards of conduct for the Defendants.

36. Piecemeal adjudications will frustrate the efforts of this or any court to determine and enforce the constitutional limits of aggregate punishment for this course of misconduct, thereby (a) forcing victims to compete in a race for judgments in order to claim against a diminishing resource, resulting in recoveries for some victims and worthless judgments for the rest; (b) ignoring what the Supreme Court has termed the substantive limit that due process places on the amount of punitive damages that may be awarded; and (c) thereby creating inequitable disparities among members of the Class and/or Subclasses.

37. Moreover, individual awards of punitive damages in the context of mass misconduct would frustrate the broader societal interest in not only punishing the Defendants for their misconduct, but in directing an appropriate share of any award toward the greatest possible public benefit, e.g., without limitation, scientific research, environmental remediation programs, clean energy programs, programs geared toward sustaining and retraining those whose livelihoods were impacted by the spill.

38. Finally, piecemeal adjudications may under-deter the Defendants' misconduct by failing to account for the full scope or total social costs, thereby frustrating the purpose of punitive damages--the vindication of society's interests in deterrence and punishment that is fully and fairly proportionate to the scope and nature of the misconduct and its harm to society as a whole.

39. By contrast, class treatment, will allow one single adjudication of the single course of the Defendants' conduct that is the underlying cause of all the injuries suffered by Plaintiffs. Class treatment presents far fewer management difficulties than repetitive individual litigation, and provides the benefits of economies of scale, exercise of equity jurisdiction, and comprehensive supervision by a single court, in order to achieve justice and proportionality, avoid undue deterrence, and determine the proper roles of the "limits of punishment" theory raised by the common questions of punitive damages under the unique circumstances of this case, without offending the due process constraints articulated by the Supreme Court. Class treatment best ensures that the Defendants pay for the economic and environmental costs of their misconduct and that there is a fair distribution of compensatory and punitive damages among Class and/or Subclass Members for their benefit, for the benefit of their beneficiaries, and for the benefit of society and the environment.

## CLAIMS FOR RELIEF

### I. Claims Under General Maritime Law

**A.     Negligence**

40.     The named Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

41.     At all times material hereto the Defendants owed and breached duties of ordinary and reasonable care to the named Plaintiffs and members of the Class in connection with the collision which occurred between a barge being pushed by the M/V MISS SUSAN and the 585-foot bulk carrier, M/V SUMMER WIND, and additionally owed and breached duties to the named Plaintiffs and Class Members to guard against and/or prevent the risk of an oil spill.

42.     The Defendants were under a duty to exercise reasonable care to ensure that if oil discharged in the event of a collision, that it would be contained and/or stopped within the immediate vicinity of the Vessel in an expeditious manner.

43.     The Defendants knew or should have known that the acts and omissions described herein could result in damage to the named Plaintiffs and Class Members.

44.     The Defendants, respectively and collectively, failed to exercise reasonable care to ensure that a collision and subsequent oil spill did not occur, and thereby breached duties owed to the named Plaintiffs and Class.

45.     At all times material hereto the M/V MISS SUSAN was owned, navigated, manned, possessed, managed, and controlled by Kirby Marine.

46.     At all times material hereto the M/V SUMMER WIND was owned, navigated, manned, possessed, managed, and controlled by Cleopatra Shipping Agency LTD.

47. As the owners and operators of the M/V MISS SUSAN and M/V SUMMER WIND, the Defendants owed duties of care to the named Plaintiffs and Class to, inter alia, man, possess, manage, control, navigate, maintain and operate these Vessels with reasonable and ordinary care.

48. Upon information and belief, the Defendants breached these duties owed to the named Plaintiffs and Class by, *inter alia*, failing to properly manage, control, maintain and operate these vessels by failing to properly navigate, steer and control the vessels.

49. The conduct of the Defendants with regard to the manufacture, maintenance and/or operation of their vessels and their appurtenances and equipment is governed by numerous state and federal laws and permits issued under the authority of these laws. These laws and permits create statutory standards that are intended to protect and benefit the named Plaintiffs and the Class. One or more of the Defendants violated these statutory standards.

50. The Defendants, respectively and collectively, failed to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the vessels in the event of a collision, and thereby breached duties owed to the named Plaintiff and the Class.

51. The Defendants, respectively and collectively, failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects an uncontrolled oil spill into the water, and thereby breached duties owed to the named Plaintiffs and Class.

52. The violations of these statutory standards constitute negligence per se under Texas and the general maritime law.

53. In addition to the foregoing acts of negligence, the named Plaintiffs aver that the collision and resulting Spill were caused by the joint, several, and solidary negligence and fault of the Defendants in one or more of the following non-exclusive particulars:

(a) Failing to properly operate the M/V MISS SUSAN and M/V SUMMER WIND;

(b) Operating the M/V MISS SUSAN and M/V SUMMER WIND in such a manner that a collision occurred, causing it to sink and resulting in the Spill;

(c) Failing to properly inspect the M/V MISS SUSAN and M/V SUMMER WIND to assure that their equipment and personnel were fit for their intended purpose;

(d) Acting in a careless and negligent manner without due regard for the safety of others;

(e) Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations, if they had been so promulgated, implemented and enforced, would have averted the collision, sinking, and Spill;

(f) Operating the M/V MISS SUSAN and M/V SUMMER WIND with untrained and unlicensed personnel;

(g) Negligently hiring, retaining and/or training personnel;

(h) Failing to take appropriate action to avoid or mitigate the accident;

(i) Negligently implementing or failing to implement policies and procedures to safely conduct maritime operations;

(j) Failing to timely bring the oil spill under control;

(k) Failing to provide appropriate accident prevention equipment; and

(l) Such other acts of negligence and omissions as will be shown at the trial of this matter.

All of the foregoing acts are in violation of the general maritime law.

54.     Plaintiffs are entitled to a judgment finding the Defendants liable, jointly, severally, and solitarily, to the named Plaintiffs and Class for damages suffered as a result of the Defendants' negligence and awarding the named Plaintiff and Class adequate compensation in an amount to be determined by the trier of fact.

55.     The injuries to the named Plaintiffs and Class were also caused by and/or aggravated by the fact that the Defendants failed to take necessary actions to mitigate the danger associated with their operations and promptly contain and confine the spill of bunker oil fuel.

56.     As a direct and proximate result of the Defendants' acts and/or omissions, the named Plaintiffs and Class have suffered, *inter alia*, damages resulting from the closure and pollution of Galveston Bay and the cessation, diversion or delay in marine traffic, including cruise ship lines.

57.     The named Plaintiffs and Class have suffered, *inter alia*, damages associated with losses and inconvenience due to their inability, and the inability of the cruise ship operators, to use Galveston Bay, the Gulf of Mexico and the Coastal Zone for scheduled departures and cruise ship purposes.

58.     As a direct and proximate result of the Defendants' acts and/or omissions, the named Plaintiff and Class have suffered, *inter alia*, damages, economic losses and inconvenience from the delays caused by the Spill.

**B. Gross Negligence and Willful Misconduct**

59.     The named Plaintiff and Class reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

60.     The Defendants owed and breached duties of ordinary and reasonable care to the named Plaintiff and Class in connection with the operation of M/V MISS SUSAN and M/V

SUMMER WIND, and additionally owed and breached duties to the named Plaintiffs and Class to guard against and/or prevent the risk of a collision and the Spill. The existence and breach of these legal duties are established under the general maritime law and state law as deemed applicable herein.

61.   The Defendants breached their legal duty to the named Plaintiffs and the Class and failed to exercise reasonable care and acted with reckless, willful, and wanton disregard in the operation of the M/V MISS SUSAN and M/V SUMMER WIND.

62.   The Defendants knew or should have known that their wanton, willful, and reckless misconduct would result in a disastrous oil spill, causing damage to those affected by the Spill.

63.   The Defendants with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and the named Plaintiffs and Class.

## II. The Oil Pollution Act

64.   The named Plaintiffs and Class expressly reserve all of their rights and interest to assert claims under The Oil Pollution Act, 33 U.S.C. § 2701, *et seq*. pending administrative proceedings.

## III. Declaratory Relief: Punitive Damages

65.   The named Plaintiff and Class Members have a legitimate and legally protected interest, additional to and independent of the interest or entitlement to compensation, in punishment and deterrence of reprehensible and harmful conduct, and in imposing full and effective punishment and deterrence of such conduct. Punitive damages do not compensate for injury. They are private fines, authorized by the General Maritime Law (and/or state law), to punish reprehensible conduct and deter its future occurrence. Punitive damages are specifically

designed to exact punishment, in excess of actual harm, to make clear that the Defendants' misconduct is especially reprehensible, to embody social outrage and moral condemnation of such misconduct, and to assure that it is not repeated. Accordingly, the named Plaintiffs and Class seek a judicial declaration against the Defendants and in favor of the Class as a whole that any settlement provisions that purport, directly or indirectly, to release or to affect the calculation of punitive damages without a judicial determination of fairness, adequacy, and reasonableness are ineffective as contrary to law, equity and public policy.

### IV. Attorney Fees and Costs

66. The named Plaintiffs and Class are entitled to an award of attorney fees and costs pursuant to Federal Rule of Civil Procedure 23, or as otherwise ordered by this Court for the administration and prosecution of this action for the benefit of all actual and potential members of the class.

67. Class members are also entitled to attorney fees and costs as plead, or as permitted under state and federal law.

### V

### JURY DEMAND

67. Pursuant to Federal Rule of Civil Procedure 38(b), the named Plaintiff and the Class demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, the named Plaintiffs, individually and on behalf of all others similarly situated, respectfully prays that the Defendants be duly served with a copy of this Complaint and cited to appear and answer within the delays established by this Honorable Court, and after due

proceedings, there be judgment entered in favor of the named Plaintiffs and Class and against the Defendants, as follows:

(a).  That this action be certified as a class action pursuant to Federal Rule of Civil Procedure 23, as defined herein, and/or by subclasses as plead herein and/or as defined by the Court;

(b).  For a finding of joint and solidary liability of the Defendants to the named Plaintiffs and Class;

(c).  For all appropriate declaratory, injunctive, and monetary relief, as plead herein;

(d).  For an award of punitive or exemplary damages, as plead herein;

(e).  For all damages and losses in an amount fair and reasonable under the premises of this matter, plus legal interest thereon from the date of judicial demand until paid, plus all costs of these proceedings, attorney fees, and all general and equitable relief to which the named Plaintiff and Class may be entitled under applicable law(s), including, but not limited to Texas, federal and maritime law; and

(f)  For trial by Jury where permitted.

Respectfully submitted,

**Dicky Grigg**
  State Bar No. 08487500
**Rick Leeper**
  State Bar No. 12156575
SPIVEY & GRIGG, L.L.P.
48 East Avenue
Austin, Texas  78701
(512) 474-6061 - ofc.
(512) 582-8560 - fax

**Frank C. Dudenhefer, Jr.**
The Dudenhefer Law Firm, L.L.C.
5200 St. Charles Ave.
New Orleans, Louisiana 70115
504.616.5226
Fcdlaw@aol.com
*Pro Hac Vice* Application Pending

**Calvin C. Fayard, Jr.**
Calvin C. Fayard, Jr. APC
519 Florida Avenue, SW
Denham Springs, LA 708726
225.664.4193
calvinfayard@fayardlaw.com
*Pro Hac Vice* Application Pending

**ATTORNEYS FOR PLAINTIFFS**

By: _____
        Rick Leeper